JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum
Denise Schulman
32 Broadway, Suite 601
New York, New York 10004
Tel: (212) 688-5640
Fax: (212) 981-9587

*Attorneys for Plaintiff and the proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **AARON PRY, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | Case No.: 23 CV 4541 |
| v. | **AMENDED COMPLAINT** |
| **AUTO-CHLOR SYSTEM, LLC and AUTO-CHLOR SYSTEM OF NEW YORK CITY INC.,** | |
| **Defendants.** | |

Aaron Pry ("Plaintiff"), individually and on behalf of all others similarly situated, alleges as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover untimely wage compensation for Plaintiff and similarly situated non-exempt hourly positions performing physical labor, including but not limited to service and sales representatives, installers, service technicians, and trainees for the aforementioned positions (collectively, "Manual Workers"), who work or have worked for Auto-Chlor System, LLC and/or Auto-Chlor System of New York City Inc. (collectively, "Auto-Chlor" or "Defendants") at Defendants' New York State locations.

2. Upon information and belief, during the relevant statute of limitations period Defendants have employed over one hundred (100) Manual Workers in New York State.

3. At all relevant times, Defendants have compensated Plaintiff and all other Manual Workers on a biweekly basis.

4. Despite being manual workers, Defendants have failed to properly pay Plaintiff and other Manual Workers their wages within seven calendar days after the end of the week in which those wages were earned.

5. In this regard, Defendants have failed to provide timely wages to Plaintiff and all other similar Manual Workers and has taken unlawful deductions from their wages.

6. Plaintiff brings this action on behalf of himself and all other similar Manual Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL"), Article 6, § 191.

## THE PARTIES

**Plaintiff**

7. Aaron Pry ("Plaintiff") is an adult individual who is a citizen of the State of New York.

8. Plaintiff was employed by Defendants as service and sales representative from approximately March 27, 2023 to April 26, 2023.

9. Plaintiff was a covered employee within the meaning of the NYLL.

**Defendant**

10. Defendant Auto-Chlor System, LLC ("Auto-Chlor LLC") is a foreign limited liability company organized and existing under the laws of Delaware and doing business as Auto-Chlor System.

11. As described on its website, Auto-Chlor System is a "dishwashing machine, laundry service, and chemical supply specialist to the hospitality, healthcare, and lodging industry[.]" Among other things, the company manufactures, leases, and services dishwashing machine.

12. As set forth in the most recent statement of information submitted by Defendant to the California Secretary of State, Auto-Chlor LLC's principal office is located in Memphis, Tennessee, and its mailing address is located at 450 Ferguson Drive, Mountain View, California. The Mountain View location is Defendant's corporate office.

13. Upon information and belief, Defendant's members are the Edward J. Ivy Descendants' Trust ("E. Ivy Trust") and/or the Jerry L. Ivy Separate Property Revocable Trust ("J. Ivy Trust"). The trustee of the E. Ivy Trust is Edward J. Ivy, and the trustee of the J. Ivy Trust is Jerry Ivy, Sr. Jerry Ivy, Sr. and Edward J. Ivy are both citizens of California.

14. Defendant is run by members of the Ivy family. Edward J. Ivy is Defendant's CEO, and Deborah Ivy, the wife of Jerry Ivy, Sr., is the company's secretary-treasurer.

15. Edward J. Ivy attested in a declaration submitted in litigation in California that he and Deborah Ivy are "intrinsically involved in the day to day operations" of Auto-Chlor LLC. According to the employee handbook Plaintiff received, this involvement "include[s] all facets of the business from providing vision and direction to support of everyday activity at the branches."

16. The company name on the paychecks Plaintiff received for his work for Defendants is "Auto Chlor System." Upon information and belief, that is a d/b/a rather than a formal business entity name.

17. The address for Auto Chlor System listed on Plaintiff's paychecks is 450 Ferguson Drive, Mountain View, CA 94043-5214.

18. Auto-Chlor LLC is the master dealer for the Auto-Chlor brand.

19. While the Auto-Chlor brand has a national presence, many of the South, Southwest, and Midwest states are serviced by independently owned dealers (*i.e.*, dealers not owned by the Ivy family). These dealers are specifically identified on the www.autochlor.com website. New York is not one of the states served by an independently owned dealer.

20. Upon information and belief, in the remainder of the country, including New York, the Auto-Chlor brand is represented by Auto-Chlor LLC or other business entities owned and controlled by the Ivy family. These businesses, including both Defendants, are part of a single integrated enterprise that employed Plaintiff.

21. Defendant Auto-Chlor System of New York City, Inc. ("Auto-Chlor NYC") is a California corporation that identifies its principal executive office as 450 Ferguson Drive, Mountain View, California. Auto-Chlor NYC's principal place of business is in Mountain View California or Carlstadt, New Jersey.

22. In a filing with the California Secretary of State, Auto-Chlor NYC identified its CEO and director as Jerry Ivy, its secretary as Deborah Ivy, and its CFO as Ed Ivy.

23. The employee handbook that Plaintiff received states, "Auto-Chlor System has 51 branches and nearly 800 employees and tens of thousands of accounts. In 2008 the Ivy dealership group purchased the parent company of Auto-Chlor System, located in Memphis." Upon information and belief, it was Auto-Chlor LLC that purchased the parent company.

24. Under the heading, "Our Size and Scope of Business," the handbook identifies five regions with branches – Northwest, California, Arizona, New York (which also includes

New Jersey, Connecticut, Baltimore, and Massachusetts), and Mid-South – as well as a manufacturing plant in Memphis, a chemical plant in Atlanta, and the corporate office in Mountain View, California.

25. Reflecting the common control over Defendants and the Ivy family's other Auto-Chlor business entities, the handbook further states, "Jerry, his wife Debbie, and his son Ed are all involved in the business. Ed plays a key role in growing both the corporate and regional businesses as the President of Auto-Chlor system. Their activities include all facets of the business from providing vision and direction to support of everyday activity at the branches."

26. Upon information and belief, the employee handbook that Plaintiff received is applicable to all of the Ivy family's Auto-Chlor entities. It contains two form confidentiality agreements that new employees are required to sign, one for California employees, and one for employees outside of California.

27. Similarly, although Plaintiff worked exclusively in New York, the employee handbook contains numerous references to rights and obligations under California law.

28. Defendants maintain a corporate human resources office in Mountain View that manages human resources functions for all branches. For example, Plaintiff received a termination letter from Defendants' director of human resources.

29. The employee handbook provides that employees may make discrimination complaints to the director of human resources.

30. The corporate human resources office also processes employee requests to review personnel records.

31. The Auto-Chlor website also includes job listings for many states, including New York.

32. Defendants were and are covered employers within the meaning of the NYLL, and at all times relevant, employed Plaintiff and similar employees.

33. Defendants have maintained control, oversight, and direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

34. Defendants apply the same employment policies, practices, and procedures to all Manual Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

## JURISDICTION AND VENUE

35. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

36. The great majority, if not all, members of the proposed class are citizens of states different from that of Defendants.

37. There are over 100 members in the proposed class.

38. Defendants are subject to personal jurisdiction in New York.

39. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings the NYLL claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as Manual Workers for
> Defendants in New York between the date six years before the

commencement of this action and the date of final judgment in this matter (the "Class").

41. The members of the Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

42. Upon information and belief, Defendants have employed more than 100 Manual Workers in New York during the six years prior to the filing of this action.

43. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.

44. Plaintiff and the Class have all been injured in that they have been compensated in an untimely manner and have been subject to unlawful deductions due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the Class.

45. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.

46. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

47. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similar persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

48. Common questions of law and fact exist as to the Class that predominate over any questions only affecting Plaintiff and/or each member of the Class individually and include, but are not limited to, whether Defendants compensated Plaintiff and the Class on a timely basis.

## FACTUAL ALLEGATIONS

49. Consistent with its policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

50. Plaintiff was employed by Defendants as a Service and Sales Representative based out of Defendants' Bronx, NY branch.

51. In that capacity, Plaintiff spent more than twenty-five percent of his worktime performing physical labor, including loading tools, parts, equipment, and containers of chemicals into a company vehicle; carrying tools, parts, equipment, and containers of chemicals into customers' locations; and repairing customers' equipment.

52. Other Manual Workers similarly spent more than twenty-five percent of their worktime performing physical labor, including the aforementioned tasks and installing, dismantling, rebuilding, and refurbishing commercial dishwasher machines.

53. Despite regularly spending more than twenty-five percent of his shift performing these physical tasks, Defendant paid Plaintiff on a biweekly basis.  For example, the paycheck issued to Plaintiff on April 14, 2023 covered the two-week period of March 26, 2023 to April 8, 2023.

54. Thus, even though Plaintiff worked the week of March 26, 2023 to April 1, 2023, Defendants failed to pay Plaintiff his wages earned in that week by April 8, 2023, as required by NYLL 191(1)(a).

55. Every time that Defendants failed to pay Plaintiff his wages earned within seven days of the end of the workweek, Defendants deprived him of the use of money that belonged to him. As a result, Plaintiff was unable to do those things that every person does with their money, such as paying bills or buying goods that he needed or wanted to buy. Moreover, by retaining money that belonged to Plaintiff, Plaintiff lost the time value of money.

56. Defendants committed the foregoing violations against Plaintiff and the Class. To be sure, the employee handbook that Defendants provided to Plaintiff states that all employees are paid on a biweekly basis.

## FIRST CAUSE OF ACTION
### New York Labor Law – Failure to Pay Timely Wages/Deductions from Wages
### (Brought on behalf of Plaintiff and the Class)

57. Plaintiff, on behalf of himself and the members of the Class, realleges and incorporates by reference all allegations in all preceding paragraphs.

58. The timely payment of wages provision NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiff and the Class.

59. Defendants failed to pay Plaintiff and the Class on a timely basis as required by NYLL § 191(1)(a).

60. Defendants' failure to timely pay wages violated both NYLL § 191 and NYLL § 193's bar on deductions from wages.

61. Due to Defendants' violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendants the amount of their untimely paid/deducted wages as liquidated

damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all other similar persons, respectfully requests that this Court grant the following relief:

A. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Designation of Plaintiff as representative of the NY Rule 23 Class and counsel of record as Class Counsel;

C. Liquidated damages permitted by law pursuant to the NYLL;

D. Pre-judgment and post-judgment interest;

E. Reasonable attorneys' fees and costs of the action; and

F. Such other relief as this Court shall deem just and proper.

Dated: New York, New York  Respectfully submitted,
July 5, 2023  JOSEPH & KIRSCHENBAUM LLP

By: /s/ *Denise A. Schulman*
D. Maimon Kirschenbaum
Denise A. Schulman
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640
Fax: (212) 981-9587

*Attorneys for Plaintiff and proposed Class*