FILED: QUEENS COUNTY CLERK 09/08/2020 12:08 PM                                INDEX NO. 720074/2019
NYSCEF DOC. NO. 24     Case 1:23-cv-04541-DEH-JLC   Document 63-3   Filed 06/24/24   Page 1 of 18
                                                                              RECEIVED NYSCEF: 09/08/2020

CHAPTER 548

3d Rdg. 963    Print 5393, 6912, 7072    Intro. 5231

# IN ASSEMBLY

### February 15, 1966

Introduced by Mr. RAMOS-LOPEZ—read once and referred to the Committee on Labor and Industries—reported from committee, advanced to a third reading, amended and ordered reprinted, retaining its place on the order of third reading—again amended on third reading, ordered reprinted, retaining its place on the order of third reading and re-engrossed

## AN ACT

**To amend the labor law, in relation to the payment of wages, and to repeal article six of such law**

Notes _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Compared by _____

APPROVED

JUN 14 1966

Approved _____ NEW YORK STATE LIBRARY

MICROFILMED

Date......... 3/3/m

No. of printed bills ......... 3

No. of exposures ......... 13
exclusive of bills

FILED: QUEENS COUNTY CLERK 09/08/2020 12:08 PM
NYSCEF DOC. NO. 24
INDEX NO. 720074/2019
RECEIVED NYSCEF: 09/08/2020
Case 1:23-cv-04541-DEH-JLC   Document 63-3   Filed 06/24/24   Page 2 of 18

Multiple memorandum received from the
State Comptroller dated ___5/26___
stating the following bill is of
"No Interest" to the Department of
Audit and Control.

    <u>Intro. No.</u>    <u>Print No.</u>

    A-5231    7022

The original memorandum filed with: A-564

01

\.NDUM

E

AN ACT to amend the labor law, in relation to the payment of
wages, and to repeal article six of such law


Purpose of bill:

To revise and recodify present provisions relating to the payment of wages.

Summary of provisions of bill:

The bill repeals the present Article 6 of the Labor Law and substitutes a new Article 6. While retaining present provisions dealing with when wages of manual workers, railroad workers and salesmen must be paid, the bill specifies that wages of white collar workers must be paid at least semi-monthly. The present law merely provides that wages of white collar workers must be paid in accordance with the agreed terms of employment.

The bill also clarifies the provisions relating to deductions from wages, and incorporates a requirement for notices to employees of wages paid, and a record-keeping requirement.

The bill also incorporates the provisions of Chapter 81 of the Laws of 1966, which increases from $100 to $200 a week the exemption from the wage payment law for executive, administrative, and professional employees. Also, the bill incorporates the provisions of another 1966 bill which deletes the exemption for employees of non-profit organizations and for domestic employees. (This pending bill had been passed by both Houses but was recalled from the Governor for certain amendments. S.I. 1607, Pr. 1652).

Statements in support of bill:

The wage payment provisions in the Labor Law have been extensively amended in recent years. As a result, these important provisions are not clearly set forth so that employers and employees can readily understand them. This bill reorganizes the provisions and, in addition, incorporates certain standards contained in the Model Bill prepared by the United States Bureau of Labor Standards and which are contained in the new New Jersey Law, which was adopted in September, 1965.

The bill makes the following substantive changes in existing law:

1. The present law contains wage payment provisions for four separate categories of workers. The manual worker must be paid weekly within seven days after wages are earned; a railroad worker must be paid on Thursday of each week the wages earned during the seven-day period ending on Tuesday of the preceding week; a salesman must be paid at least once a month; and all other workers must be paid in accordance with the agreed terms of employment.

   This bill retains the present provisions for manual and railroad workers and for salesmen. However, for all other workers the bill requires payments not less frequently than semi-monthly. In this respect the bill follows both the Model Bill and the New Jersey Law. It should be noted, however, that the present exemption of professionals and executives is retained.

   The bill deletes the present exemption for non-profit organizations and for employers of domestic workers. However, for manual employees of a non-profit organization, the bill provides that wages must be paid in accordance with the agreed terms of employment but not less frequently than semi-monthly.

#10
(Rev.)
4/21/66

2. The bill writes into the statute the purport of opinions by the courts and the Attorney General dealing with deductions from wages. These opinions hold that the prohibition on deductions from wages does not apply to deductions which are voluntarily authorized by the employees to pay to a third party for the employee's benefit, such as deductions for group insurance and charitable contributions.

3. The bill requires an employer to notify the employee of his pay day and to give each employee a statement showing gross wages, deductions and net wages. Such a wage statement is now required for employees covered by a State Minimum Wage Order. This requirement would be extended by this bill to employees not subject to a State Minimum Wage Order, such as employees engaged in interstate commerce who are covered by the Federal minimum wage law.

The bill also provides that, at the request of an employee, the employer would have to furnish an explanation of how the wages were computed.

The bill clarifies the application of the wage payment provisions for manual workers. The present law requires weekly payments to an "employee", and it is necessary to know that employee is defined in an earlier section of the Labor Law as a laborer, workingman or mechanic. The bill clearly indicates that weekly payment of wages applies to manual workers, except those employed by a non-profit organization.

The bill specifically excludes fringe benefits from the term wages. This is in accord with the holding of the Court of Appeals. (People v. Vetri, 309 N. Y. 401 /1955/.) In this connection it should be noted that a 1965 enactment, which will become effective September 1, 1967, transferred from the Penal Law to the Labor Law the provision making it a misdemeanor for an employer to fail to pay agreed fringe benefits. (Chapter 1031, Laws of 1965, transferring Penal Law Section 962-a to Labor Law.)

The bill specifically provides that nothing in the bill shall justify non-compliance with the wage assignment law (Article 3-A of the Personal Property Law) or with any other law relating to deductions from wages. Under the wage assignment law, an assignment must meet certain specified requirements, and deductions may not exceed 10 per cent of wages.

Other provisions of existing law, such as cash payment of wages and the equal pay section are not substantially changed.

OFFICE OF

# THE INDUSTRIAL COMMISSIONER

ALBANY

DEPARTMENT OF LABOR  June 3, 1966

**ASSEMBLY:**   Int. 5231
                Pr. 7072        Introduced by: Mr. Ramos-Lopez

**RECOMMENDATION:** Approval. The bill was sponsored by the Department of Labor.

**STATUTES INVOLVED:**   Labor Law, Article 6.

**EFFECTIVE DATE:**   October 1, 1966.

**DISCUSSION:**

1. **Purpose of bill:**

   To revise and recodify the provisions relating to the payment of wages.

2. **Summary of provisions of bill:**

   The bill repeals the present Article 6 of the Labor Law and substitutes a new Article 6.

   The bill makes the following substantive changes in existing law:

   1. The present law contains wage payment provisions for four separate categories of workers. The manual worker must be paid weekly within seven days after wages are earned; a railroad worker must be paid on Thursday of each week the wages earned during the seven-day period ending on Tuesday of the preceding week; a salesman must be paid at least once a month; and all other workers must be paid in accordance with the agreed terms of employment.

      This bill retains the present provisions for manual and railroad workers and for salesmen. However, for all other workers the bill requires payments not less frequently than semi-monthly. In this respect the bill follows both the Model Bill and New Jersey Law.

      The bill deletes the present exemption for non-profit organizations and for employers of domestic workers. However, for manual employees of a non-profit organization, the bill provides that wages must be paid in accordance with the agreed terms of employment but not less frequently than semi-monthly.

   2. The bill writes into the statute the purport of opinions by the courts and the Attorney General dealing with deductions from wages. These opinions hold that the prohibition on deductions from wages does not apply to deductions which are voluntarily authorized by the employees to pay to a third party for the employee's benefit, such as deductions for union dues, group insurance and charitable contributions.

DEPARTMENT OF LABOR — 2 — June 3, 1966

<u>ASSEMBLY</u>: Int. 5231
Pr. 7072     Introduced by: Mr. Ramos-Lopez

3. The bill requires an employer to notify the employee of his pay day and to give each employee a statement showing gross wages, deductions and net wages. Such a wage statement is now required for employees covered by a State Minimum Wage Order, and would be extended by this bill to employees not subject to a State Minimum Wage Order, such as employees engaged in interstate commerce who are covered by the Federal minimum wage law.

The bill also provides that, at the request of an employee, the employer would have to furnish an explanation of how the wages were computed.

The bill clarifies the application of the wage payment provisions for manual workers. The present law requires weekly payments to an "employee", and it is necessary to know that employee is defined in an earlier section of the Labor Law as a laborer, workingman or mechanic. The bill clearly indicates that weekly payment of wages applies to manual workers, except those employed by a non-profit organization.

The bill specifically excludes fringe benefits from the term wages. This is in <u>ac</u>cord <u>with</u> the holding of the Court of Appeals. (<u>People</u> v. <u>Vetri</u>, 309 N. Y. 401 /_ 1955 _/.) In this connection it should be noted that a 1965 enactment, which will become effective September 1, 1967, transferred from the Penal Law to the Labor Law the provision making it a misdemeanor for an employer to fail to pay agreed fringe benefits. (Chapter 1031, Laws of 1965, transferring Penal Law Section 962-a to Labor Law.)

The bill specifically provides that nothing in the bill shall justify non-compliance with the wage assignment law (Article 3-A of the Personal Property Law) or with any other law relating to deductions from wages. Under the wage assignment law, an assignment must meet certain specified requirements, and deductions may not exceed 10 per cent of wages.

Other provisions of existing law, such as cash payment of wages and the equal pay section are not substantially changed.

The bill also incorporates the provisions of Chapter 81 of the Laws of 1966, which increases from $100 to $200 a week the exemption from the wage payment law for executive, administrative, and professional employees. Also, the bill incorporates the provisions of another 1966 bill which deletes the exemption for employees of non-profit organizations and for domestic employees. (This bill was passed by both Houses and was sent to the Governor on March 26, 1966 for executive action. S. I. 1607, Pr. 5414).

3. <u>Prior legislative history</u>:

As indicated under Item 2 above, two other bills affecting Article 6 of the Labor Law were introduced and passed by the current legislature.

No bill to revise and recodify the entire Article 6 has been previously introduced. In 1963 and 1964 the Labor Department sponsored a bill dealing only with deductions from wages. The 1963 bill was passed in the Senate, but did not come out of the Assembly Committee (Laverne, S. I. 2347, Pr. 2438). The 1964 bill reached Third Reading in the Senate (Laverne, S. I. 1444, Pr. 4006).

DEPARTMENT OF LABOR - 3 - June 3, 1966

ASSEMBLY: Int. 5231
Pr. 7072            Introduced by: Mr. Ramos-Lopez

4. Known position of others regarding bill:

   The bill, in its present amended form, incorporates suggestions made by industry and labor representatives. Discussions were held with representatives of Associated Industries, Commerce and Industry Association, Empire State Chamber of Commerce, and the New York State Council of Retail Merchants. The only known objection of employers relates to the coverage of executives, administrators, and professionals earning under $200 a week. This objection is described below under Item 7. As to the labor groups, the bill contains a specific recommendation of the State AFL-CIO on deductions for union dues, and the State AFL-CIO has issued a memorandum in support of this bill.

5. Budget implications:

   Previous memorandums submitted in connection with the two substitute bills described above amending Article 6 indicate that although the workload of the Division of Labor Standards would be increased, the extent of such increase is presently unknown. Such increased workload would not reach its full impact during this fiscal year. Based upon the number of complaints which the Department of Labor now rejects for lack of jurisdiction but which it would process under this bill, the services of ten additional investigators may be required.

6. Arguments in support of bill:

   The wage payment provisions in the Labor Law have been extensively amended in recent years. As a result, these important provisions are not clearly set forth so that employers and employees can readily understand them. This bill reorganizes the provisions and, in addition, incorporates certain standards contained in the Model Bill prepared by the United States Bureau of Labor Standards, and which are contained in the new New Jersey Law, which was adopted in September, 1965.

7. Arguments in opposition to bill:

   In the past two weeks, industry representatives have raised an objection to the provision in the already enacted L.1966, ch. 81 which is restated in the current bill and which requires semi-monthly payments to executives, administrators, and professionals earning less than $200 a week. They assert that many large firms have executives who are paid between $7,500 and $10,000 a year and who are on an "exempt" payroll, which carries with it certain prestige. Employees on the "exempt" payroll are paid on a monthly basis. In this connection it should be noted that Chapter 81 of the Laws of 1966 increased from $100 to $200 a week the exemption of the wage payment law for executive, administrative, and professional employees.

   Also to be noted is that according to a study of clerical salaries by the Commerce and Industry Association only five per cent of the reporting firms paid wages on a monthly basis. The other ninety-five per cent of reporting firms paid on a weekly, bi-weekly or semi-monthly basis. (Commerce and Industry Association of New York, Inc., Survey of Salaries, Hiring Rates and Office Personnel Practices New York, 21st Annual Survey of Salaries, June of 1964, page 30:11).

DEPARTMENT OF LABOR          - 4 -          June 3, 1966

<u>ASSEMBLY</u>:   Int. 5231
             Pr. 7072       Introduced by: Mr. Ramos-Lopez

8. <u>Reasons for recommendation</u>:

The wage payment provisions established by this bill compare favorably with those of any other state in the nation. Not only are the rights and obligations of employees and employers presented in a clear fashion, but the extension of the provisions for the prompt payment of wages, and the requirement for wage statements to be given to employees and for record-keeping provide increased wage protection to employees of the State. Developed after extensive conferences with management and labor, this bill marks the third recent modernization of Labor Law provisions. Previously, in 1962, the child labor standards (Article 4 of the Labor Law) were up-dated, and in 1963 the standards governing working hours of minors and women were recodified (Article 5).

                                       M. P. Catherwood
                                       Industrial Commissioner

10-Day Bill

FORM B-201(a) (9/61)     BUDGET REPORT ON BILLS     Session Year 1966

| SENATE | Introduced by: | ASSEMBLY |
|---|---|---|
| Pr: | Mr. Ramos-Lopez | Pr: 7072 |
| Int: | | Int: 5231 |

Law   Labor

Subject and Purpose (Brief Recapitulation) To clarify and revise the present wage payment provisions in the Labor Law.

Division of the Budget recommendation on the above bill:

Approve: __X__   Veto: _____   No Objection: _____   No Recommendation: _____

This bill is identical to ( ) very similar to ( X )

_____ Labor _____ No. __10__ which
(department or agency)

was submitted as a departmental bill this year. The points made in our earlier analysis of the departmental bill are still valid and our recommendation is unchanged.

(If the very similar category is checked, list below the changes contained in the bill as passed and discuss them to the required extent.)

The amendments to this bill were worked out in conjunction with both labor and industry. They primarily:
1. Reduce the record-keeping requirements for employers.
2. Conform this proposal to recently enacted legislation (Ch. 81).

We continue to recommend approval.

Date: May 27, 1966     Examiner: Thomas Ray

THE ASSOCIATION OF THE BAR
OF THE CITY OF NEW YORK
42 WEST 44TH STREET
NEW YORK 10036

COMMITTEE ON STATE LEGISLATION

ALVIN H. SCHULMAN, CHAIRMAN
200 PARK AVENUE
NEW YORK 10017
TN 7-8500

LEONARD SCHAITMAN, SECRETARY
200 PARK AVENUE
NEW YORK 10017
TN 7-8500

June 3, 1966

Re: A. Int. 5231, Pr. 5393, 6912, 7072 - Approved

Dear Mr. Douglass:

Answering your inquiry with respect to the above bill, we wish to inform you that we approve the measure.

The bill, to take effect October 1, 1966, was prepared under the direction of the New York State Department of Labor and introduced at its request. It would repeal Article 6 of the Labor Law [sections 195 - 199(b)] and substitute therefor the rearranged, clarified and excellently redrafted substance of the existing law. The subject matters of the existing law and of the bill are principally the following: minimum frequency of wage payments to manual and railroad workers, commission salesmen, clerical and other workers; method of payment by cash or check; permissible deductions from wage payments by employers; prohibition of wage differentials based solely on sex of employees; wage record-keeping requirements of employers; powers of the Industrial Commissioner with regard to collection of delinquent wage payments and adjustment of controversies.

The salutary objectives of the existing law are well codified in this excellent redraft and, consequently we approve the bill.

Sincerely,

[signature]
Chairman

Hon. Robert R. Douglass
Executive Chamber
State Capitol
Albany, New York 12224

This letter was prepared by the Association's Committee on Labor and Social Security Legislation.



# NEW YORK STATE AFL-CIO

DE WITT CLINTON HOTEL • ALBANY, N. Y. 12201 • PHONE 436-8516

RAYMOND R. CORBETT
President



LOUIS HOLLANDER
Secretary-Treasurer

## MEMORANDUM

## *WE ENDORSE THIS BILL*

<u>1966</u>   S.I. 3187, S.P. 5625,   A.I. 5231, A.P. 7072
         LAVERNE      5724         RAMOS-LOPEZ

<u>IMPROVEMENTS IN WAGE PAYMENT PROTECTIONS</u>

This bill revises and recodifies the wage payment article of the Labor Law. The present law has been extensively amended in recent years with the result that its provisions are not readily understandable. There is merit in recodifying and restating the article.

The bill specifies and clarifies the requirements for frequency of payments, deductions from wages, notice to employees of wages paid, and necessary record keeping.

In addition, the bill incorporates the provisions of the law enacted earlier this year which increases from $100 to $200 a week the exemption for executive, administrative and professional employees, thus extending wage payment protection to this large group of workers.

The bill also incorporates the provisions of another bill passed earlier this year by which wage payment protections would be extended to domestic workers and employees of non-profit organizations.

These changes are long overdue improvements in the Labor Law. We urge adoption of this measure.

TO COUNSEL TO THE GOVERNOR

   RE: ASSEMBLY INT. 5231 , PR. 7072
     SENATE INT. , PR.

  This annexed bill does not appear to involve a substantial or unusual legal problem, nor to relate directly to the functions of the Department of Law. Consequently, the bill is returned without comment. If there is some particular aspect of the bill upon which you wish to comment, please advise me.

Dated: June 1, 1966

          LOUIS J. LEFKOWITZ
          Attorney General

ment setting forth the amount of the expense budget as fixed for the ensuing fiscal year and also an estimate of the probable amount of receipts into the city treasury during the ensuing fiscal year from all sources of revenue of the general fund; and (b) the council shall meet not later than the twenty-ninth day of June, nineteen hundred sixty-six to fix the annual tax rate for the fiscal year nineteen hundred sixty-six–nineteen hundred sixty-seven. The council shall deduct the total amount of receipts as estimated by the mayor from the amount of the budget, as fixed for the ensuing fiscal year, and shall cause to be raised by tax on real property such sum as shall be as nearly as possible, but not less than, the balance so arrived at, by fixing a tax rate in cents and hundredths of a cent upon each dollar of assessed valuation. The provisions of section one hundred seventy of the charter shall apply to the annual meeting of the council held pursuant to this section. All the provisions of chapter seven of the charter and all other provisions of law applicable to the levy, administration, collection and payment of city taxes on real property shall apply to the levy, administration, collection and payment of the tax caused to be raised pursuant to this section, except that the dates specified in this section shall be substituted for the dates specified in sections one hundred sixty-eight and one hundred sixty-nine of the charter.

§ 2. This act shall take effect immediately.

## CHAPTER 548*

AN ACT to amend the labor law, in relation to the payment of wages, and to repeal article six of such law

Became a law June 14, 1966, with the approval of the Governor. Passed by a majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Article six of the labor law and all acts amendatory thereof and supplemental thereto, said article comprising section one hundred ninety-five through and including section one hundred ninety-nine-b of such law, as amended, are hereby **repealed.**

§ 2. Such law is hereby amended by adding thereto a new article, to be article six, to read as follows:

---

* (NOTE.—This act was prepared under the direction of the New York State Department of Labor and was introduced at its request.)

Article 6 of the Labor Law, which is repealed by this act, contains provisions governing the payment of wages to employees. The new Article 6, proposed by this act, revises and recodifies the wage payment provisions. Chapter 81 of the laws of 1966 which is repealed by this act, increases from $100 to $200 a week the exemption for executive, administrative and professional employees. This provision is incorporated in the above act.

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

FILED: QUEENS COUNTY CLERK 09/08/2020 12:08 PM INDEX NO. 708074/2019
NYSCEF DOC. NO. 24                                              RECEIVED NYSCEF: 09/08/2020
Case 1:23-cv-04541-DEH-JLC   Document 63-3   Filed 06/24/24   Page 14 of 18

## ARTICLE 6
### PAYMENT OF WAGES

Section 190. *Definitions.*
       191. *Frequency of payments.*
       192. *Cash payment of wages.*
       193. *Deductions from wages.*
       194. *Differential in rate of pay because of sex prohibited.*
       195. *Notice and record-keeping requirements.*
       196. *Powers of commissioner.*
       197. *Civil penalty.*
       198. *Costs, remedies.*
       199. *Rules and regulations.*

190. *Definitions.* As used in this article:

1. "*Wages*" means the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis. The term "wages" does not mean wage supplements, including but not limited to health, welfare and retirement benefits, and vacation, separation or holiday pay.

2. "*Employee*" means any person employed for hire by an employer in any employment.

3. "*Employer*" includes any person, corporation or association employing any individual in any occupation, industry, trade, business or service. The term "employer" shall not include a governmental agency.

4. "*Manual worker*" means a mechanic, workingman or laborer.

5. "*Railroad worker*" means any person employed by an employer who operates a steam, electric or diesel surface railroad or is engaged in the sleeping car business. The term "railroad worker" shall not include a person employed in an executive capacity.

6. "*Commission salesman*" means any employee whose principal activity is the selling of any goods, wares, merchandise, services, real estate, securities, insurance or any article or thing and whose earnings are based in whole or in part on commissions. The term "commission salesman" does not include an employee whose principal activity is of a supervisory, managerial, executive or administrative nature.

7. "*Clerical and other worker*" includes all employees not included in subdivisions four, five and six of this section, except any person employed in a bona fide executive, administrative, or professional capacity whose earnings are in excess of two hundred dollars a week.

8. "*Week*" means a calendar week or a regularly established payroll week. "*Month*" means a calendar month or a regularly established fiscal month.

9. "*Non-profitmaking organization*" means a corporation, unincorporated association, community chest, fund or foundation organ-

FILED: QUEENS COUNTY CLERK 09/08/2020 02:08 PM INDEX NO. 707452/2019
NYSCEF DOC. NO. 24                                    RECEIVED NYSCEF: 09/08/2020
Case 1:23-cv-04541-DEH-JLC   Document 63-3   Filed 06/24/24   Page 15 of 18

ized and operated exclusively for religious, charitable or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or individual.

§ 191. *Frequency of payments.* 1. Every employer shall pay wages in accordance with the following provisions:

a. *Manual worker.*—A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned; provided however that a manual worker employed by a non-profitmaking organization shall be paid in accordance with the agreed terms of employment, but not less frequently than semi-monthly.

b. *Railroad worker.*—A railroad worker shall be paid on or before Thursday of each week the wages earned during the seven-day period ending on Tuesday of the preceding week.

c. *Commission salesman.*—A commission salesman shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned; provided, however, that if monthly or more frequent payment of wages, salary, drawing accounts or commissions are substantial, then additional compensation earned, including but not limited to extra or incentive earnings, bonuses and special payments, may be paid less frequently than once in each month, but in no event later than the time provided in the employment agreement or compensation plan. The employer shall furnish a commission salesman, upon written request, a statement of earnings paid or due and unpaid.

d. *Clerical and other worker.*—A clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer.

2. *No employee shall be required as a condition of employment to accept wages at periods other than as provided in this section.*

3. *If employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section. If requested by the employee, such wages shall be paid by mail.*

§ 192. *Cash payment of wages.* 1. The wages of a manual worker shall be paid in cash; provided, however, that the commissioner may permit an employer to pay wages of a manual worker by check if the employer furnishes satisfactory proof to the commissioner of his financial responsibility and gives reasonable assurance that such checks may be cashed by the workers without difficulty and for the full amount for which they are drawn.

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

FILED: QUEENS COUNTY CLERK 09/08/2020 02:08 PM INDEX NO. 708074/2019
NYSCEF DOC. NO. 24 RECEIVED NYSCEF: 09/08/2020
Case 1:23-cv-04541-DEH-JLC   Document 63-3   Filed 06/24/24   Page 16 of 18

2. This section shall not apply to employees working on a farm not connected with a factory.

§ 193. *Deductions from wages.* 1. No employer shall make any deduction from the wages of an employee, except deductions which:

a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or

b. are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.

2. Nothing in this section shall justify noncompliance with article three-A of the personal property law relating to assignment of earnings, nor with any other law applicable to deductions from wages.

§ 194. *Differential in rate of pay because of sex prohibited.* 1. No employee shall be paid a wage at a rate less than the rate at which an employee of the opposite sex in the same establishment is paid for equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, except where payment is made pursuant to a differential based on:

a. a seniority system;

b. a merit system:

c. a system which measures earnings by quantity or quality of production; or

d. any other factor other than sex.

2. This section shall not apply to persons engaged in domestic service in the home of the employer, or to labor on a farm, or to employees of any corporation or association organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

§ 195. *Notice and record-keeping requirements.* Every employer shall:

1. *notify his employees at the time of hiring of the rate of pay and of the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article;*

2. *notify his employees of any changes in the pay days prior to the time of such changes;*

3. *furnish each employee with a statement with every payment of wages, listing gross wages, deductions and net wages, and upon the request of an employee furnish an explanation of how such wages were computed;*

FILED: QUEENS COUNTY CLERK 09/08/2020 02:08 PM INDEX NO. 707074/2019
NYSCEF DOC. NO. 24 RECEIVED NYSCEF: 09/08/2020
Case 1:23-cv-04541-DEH-JLC   Document 63-3   Filed 06/24/24   Page 17 of 18

4. establish, maintain and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

§ 196. *Powers of commissioner.* 1. *In addition to the powers of the commissioner specified in other sections of this chapter, the commissioner shall have the following duties, powers and authority:*

*a. He shall investigate and attempt to adjust equitably controversies between employers and employees relating to this article.*

*b. He may take assignments of wage claims in trust for an assigning employee. All such assignments shall run to the commissioner and his successor in office. The commissioner may sue employers on wage claims thus assigned, with the benefits and subject to the provisions of existing law applying to actions by employees for collection of wages. He may join in a single action any number of wage claims against the same employer.*

*c. He may institute proceedings on account of any criminal violation of any provision of this article.*

*d. If it shall appear to him that any employer has been convicted of a violation of any provision of this article or that any judgement against an employer for non-payment of wages remains unsatisfied for a period of ten days after the time to appeal therefrom has expired, and that no appeal therefrom is then pending, the commissioner may require such employer to deposit with him a bond in such sum as he may deem sufficient and adequate in the circumstances, together with two or more sureties or a duly authorized surety company, to be approved by the commissioner. The bond shall be payable to the commissioner and shall be conditioned that the employer will, for a definite future period, not exceeding two years, pay his employees in accordance with the provisions of this article, and shall be further conditioned upon the payment by the employer of any judgment which may be recovered against such employer pursuant to the provisions of this article.*

*If within ten days after demand for such bond, which demand may be made by certified or registered mail, such employer shall fail to deposit the same, the commissioner may bring an action in the name and on behalf of the people of the state of New York against such employer in the supreme court to compel such employer to furnish such a bond or to cease doing business until he has done so. The employer shall have the burden of proving that either such a bond is unnecessary or that the amount demanded is excessive. If the court finds that there is just cause for requiring the bond and that same is reasonably necessary or proper to secure prompt payment of the wages of the employees of such employer and his compliance with the provisions of this article, the court may enjoin such employer and such other person or persons as may have been or may be concerned with or in any way participating in the failure to pay the wages resulting in the conviction or in the judgment as aforesaid, from doing business until the requirement*

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

FILED: QUEENS COUNTY CLERK 09/08/2020 02:08 PM
NYSCEF DOC. NO. 24

Case 1:23-cv-04541-DEH-JLC   Document 63-3   Filed 06/24/24   Page 18 of 18

INDEX NO. 728074/2019
RECEIVED NYSCEF: 09/08/2020

is met and make other and further orders appropriate to compel compliance with the requirement.

2. Nothing in this section shall be construed as requiring the commissioner in every instance to investigate and attempt to adjust controversies, or to take assignments of wage claims, or to institute criminal prosecutions for any violation under this article, but he shall be deemed vested with discretion in such matters.

§ 197. Civil penalty. Any employer who fails to pay the wages of his employees or shall differentiate in rate of pay because of sex, as provided in this article, shall forfeit to the people of the state the sum of fifty dollars for each such failure, to be recovered by the commissioner in a civil action.

§ 198. Costs, remedies. 1. In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court may allow such employee in addition to ordinary costs, a reasonable sum, not exceeding fifty dollars for expenses which may be taxed as costs. No assignee of a wage claim, except the commissioner, shall be benefited by this provision.

2. The remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other.

§ 199. Rules and regulations. The commissioner may issue such rules and regulations as he determines necessary for the purposes of carrying out the provisions of this article.

§ 3. Section one hundred ninety-six-c of such law, as added by chapter five hundred thirty-nine of the laws of nineteen hundred fifty-six, and as amended by chapter eighty-one of the laws of nineteen hundred sixty-six, is hereby **repealed**.

§ 4. This act shall take effect October first, nineteen hundred sixty-six.

## CHAPTER 549

AN ACT to amend the penal law, in relation to animals

Became a law June 14, 1966, with the approval of the Governor. Passed by a majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Section one hundred eighty-one of the penal law, as last amended by chapter one hundred eleven of the laws of nineteen hundred forty, is hereby amended to read as follows:

§ 181. Keeping a place where animals are fought.

A person who keeps or uses, or is in any manner connected with, or interested in the management of, or receives money for the admission of any person to, a house, apartment, pit or place kept