# FY 2025 NEW YORK STATE EXECUTIVE BUDGET

# EDUCATION, LABOR AND FAMILY ASSISTANCE
# ARTICLE VII LEGISLATION

# MEMORANDUM IN SUPPORT

**FY 2025 NEW YORK STATE EXECUTIVE BUDGET**

**EDUCATION, LABOR AND FAMILY ASSISTANCE
ARTICLE VII LEGISLATION**

**MEMORANDUM IN SUPPORT**

**CONTENTS**

| PART | DESCRIPTION | STARTING PAGE NUMBER |
|------|-------------|----------------------|
| A | School Aid | 6 |
| B | Ensure Instructional Best Practices in the Teaching of Reading | 7 |
| C | FAFSA Completion for High School Students | 8 |
| D | Amend Requirements for Bundy Aid Apportionment | 9 |
| E | Ensuring Informational Coordination Between State Educational Agencies | 10 |
| F | Tuition Assistance Program Tuition Credit Extender | 10 |
| G | Continue the Current Financing Structure for Residential Placements of Children with Special Needs Outside of New York | 11 |
| H | Authorize the Pass-Through of any Federal Supplemental Security Income Cost of Living Adjustment | 12 |
| I | Implement Mandatory Federal Child Support Changes | 13 |
| J | Require Paid Breaks for Breast Milk Expression in the Workplace | 14 |
| K | Limit Liquidated Damages in Certain Frequency of Pay Violations | 14 |
| L | Expand Recovery Tools for Stolen Wages | 15 |
| M | Sunset the State's COVID-19 Sick Leave Law | 16 |

| PART | DESCRIPTION | STARTING PAGE NUMBER |
|---|---|---|
| N | Authorize Mortgage Insurance Fund (MIF) Utilization | 17 |
| O | Enhance Protections Against Deed Theft | 18 |
| P | Authorize the repurposing of real property owned by SUNY and DOT | 19 |
| Q | Authorize New York City and the New York State Urban Development Corporation to Allow for Denser Residential Development | 20 |
| R | Authorize Tax Incentive Benefits for Converting Commercial Property to Affordable Housing | 20 |
| S | Enable the City of New York to Create a Pathway to Legalize Pre-Existing Basement and Cellar Dwelling Units in New York City | 21 |
| T | Extend the Project Completion Deadline for Vested Projects in Real Property Tax Law 421-a | 23 |
| U | Create New Tax Abatement for Rental Housing Construction | 23 |

MEMORANDUM IN SUPPORT

A BUDGET BILL submitted by the Governor in
Accordance with Article VII of the Constitution

AN ACT to amend the education law, in relation to
contracts for excellence; to amend the education
law, in relation to foundation aid; to amend the
education law, in relation to allowable
transportation expenses; to amend the education
law, in relation to transportation aid and the
Clean Water, Clean Air, and Green Jobs
Environmental Bond Act of 2022; to amend the
education law, in relation to academic
enhancement aid; to amend the education law,
in relation to high tax aid; to amend the
education law, in relation to universal
prekindergarten and the Statewide universal full-
day pre-kindergarten program; to amend the
education law, in relation to implementation of
the smart schools bond act of 2014; to amend
the education law, in relation to special
apportionments and grants-in-aid to school
districts; to amend chapter 91 of the laws of
2002 amending the education law and other
laws relating to reorganization of the New York
city school construction authority, board of
education and community boards, in relation to
extending the effectiveness thereof; to amend
chapter 345 of the laws of 2009, amending the
education law and other laws relating to the New
York city board of education, chancellor,
community councils, and community
superintendents, in relation to the effectiveness
thereof; to amend the education law, in relation
to state aid adjustments; to amend the education
law, in relation to extending certain provisions of
the teachers of tomorrow teacher recruitment

1

and retention program; to amend the education law, in relation to maximum class sizes for special classes for certain students with disabilities; to amend chapter 82 of the laws of 1995, amending the education law and other laws relating to state aid to school districts and the appropriation of funds for the support of government, in relation to the effectiveness thereof; to amend chapter 756 of the laws of 1992 relating to funding a program for work force education conducted by the consortium for worker education in New York city, in relation to reimbursement for the 2023-2024 school year withholding a portion of employment preparation education aid and in relation to the effectiveness thereof; to amend the education law, in relation to the financing of charter schools; to amend part A of chapter 56 of the laws of 2023 directing the education department to conduct a comprehensive study of alternative tuition rate-setting methodologies for approved providers operating school-age and preschool programs receiving state funding, in relation to extending the date for the submission of such recommendations; to amend chapter 169 of the laws of 1994, relating to certain provisions related to the 1994-95 state operations, aid to localities, capital projects and debt service budgets, in relation to the effectiveness thereof; to amend chapter 97 of the laws of 2011, amending the education law relating to census reporting, in relation to the effectiveness thereof; providing for special apportionment for salary expenses; providing for special apportionment for public pension accruals; providing for set-asides from the state funds which certain districts are receiving from the total foundation aid; and providing for support of public libraries; to repeal certain provisions of the education law relating to phase-in foundation increase; and to

2

repeal certain provisions of the education law relating to foundation aid (Part A); to amend the education law, in relation to establishing evidence-based reading instructional best practices for students attending prekindergarten through grade three (Part B); to amend the education law, in relation to directing the commissioner of education to require the completion of a FAFSA or a waiver of such requirement and requires school districts issue annual reports on students completing the FAFSA and the waiver (Part C); to amend the education law, in relation to eligibility for unrestricted aid to independent colleges and universities (Part D); to amend the education law, in relation to ensuring informational coordination between state educational agencies (Part E); to amend chapter 260 of the laws of 2011 amending the education law and the New York state urban development corporation act relating to establishing components of the NY-SUNY 2020 challenge grant program, in relation to the effectiveness thereof (Part F); to amend part N of chapter 56 of the laws of 2020, amending the social services law relating to restructuring financing for residential school placements, in relation to the effectiveness thereof (Part G); to amend the social services law, in relation to increasing the standards of monthly need for aged, blind and disabled persons living in the community (Part H); to amend the family court act and the domestic relations law, in relation to establishment and modification of child support orders (Part I); to amend the labor law, in relation to nursing employees' right to express breast milk (Part J); to amend the labor law, in relation to limiting liquidated damages in certain frequency of pay violations (Part K); to amend the labor law, in relation to civil penalties for violations of certain

3

provisions for the payment of wages (Part L); to amend chapter 25 of the laws of 2020, relating to providing requirements for sick leave and the provision of certain employee benefits when such employee is subject to a mandatory or precautionary order of quarantine or isolation due to COVID-19, in relation to providing for the expiration and repeal of such provisions (Part M); to utilize reserves in the mortgage insurance fund for various housing purposes (Part N); to amend the criminal procedure law and the penal law, in relation to the crime of deed theft; to amend the real property actions and proceedings law, in relation to the partition of heirs' property; and to amend the real property law, in relation to allowing transfer on death deeds (Part O); relating to the conveyance and use of real property owned and maintained by the State University of New York at Farmingdale (Subpart A); relating to the conveyance and use of real property owned and maintained by the State University of New York at Stony Brook (Subpart B); and relating to the conveyance and use of real property owned and maintained by the New York State Department of Transportation (Subpart C) (Part P); to amend the multiple dwelling law, in relation to authorizing a city of one million or more to remove the cap on the floor area ratio of certain dwellings (Part Q); to amend the labor law and the real property tax law, in relation to the exemption from real property taxation of certain multiple dwellings in a city having a population of one million or more (Part R); to amend the multiple dwelling law, in relation to establishing a program to address the legalization of specified basement and cellar dwelling units and the conversion of other specified basement and cellar dwelling units in a city with a population of one million or more (Part S); to amend the real

4

property tax law, in relation to eligible multiple dwellings under the affordable New York housing program (Part T); and to amend the real property tax law and the labor law, in relation to enacting the affordable neighborhoods for New Yorkers tax incentive (Part U)

**PURPOSE:**

This bill contains provisions needed to implement the Education, Labor and Family Assistance portions of the FY 2025 Executive Budget.

This memorandum describes Parts A through U of the bill which are described wholly within the parts listed below.

**Part A – School Aid**

Purpose:

This bill would amend the Education Law to make various changes necessary to authorize School Aid and implement the education portion of the FY 2025 Executive Budget.

Summary of Provisions and Statement in Support:

Education in New York represents a significant investment of State and local resources. This bill includes measures to authorize School Aid along with other changes necessary to implement education-related programs in the Executive Budget. Significant provisions include:

- **$35.3 Billion in Support to School Districts.** The FY 2025 Executive Budget provides $35.3 billion in total School Aid for the 2024-25 school year (SY 2025), the highest level of School Aid in history. This investment represents a year-to-year increase of $825 million (2.4 percent), including a $507 million Foundation Aid increase and a $318 million increase in all other School Aid programs, including expense-based aids, categorical aids, and competitive grants.

- **Foundation Aid.** The FY 2025 Executive Budget provides a $507 million (2.1 percent) increase in Foundation Aid for SY 2025. This increase is driven largely by the formula's inflation factor, which the Executive Budget sets at 2.4 percent, representing the average annual change in the Consumer Price Index over the last 10 calendar years (2014-2023), excluding the highest and lowest years. Through a wealth-based "Transition Adjustment," the Executive Budget also allows districts to retain $207 million of Foundation Aid in SY 2025 in excess of their respective full funding targets under the formula, moderating the impact of enrollment declines.

- **Environmental Bond Act and Transportation Aid.** The FY 2025 Executive Budget amends Transportation Aid to exclude any grants (or vouchers on behalf of a district) provided through the Clean Water, Clean Air and Green Jobs Environmental Bond Act of 2022 from being considered revenue that would otherwise reduce a district's allowable transportation expense. School districts that receive these grants (or vouchers) to purchase zero-emission buses would thus receive more Transportation

Aid than under the current law; however, the sum of Transportation Aid and the Bond Act funding could not exceed the expenses.

- **Prekindergarten.** The FY 2025 Executive Budget removes the "supplement, not supplant" requirement for State funds, allowing school districts to access their Statewide Universal Full-Day Prekindergarten grants prior to exhausting their Universal Prekindergarten allocations.

- **New York City School Governance.** The FY 2025 Executive Budget provides a four-year extension of the current system of governance of New York City public schools, which is currently scheduled to expire on June 30, 2024.

- **Special Education Tuition Rate-Setting Reform.** As requested by SED, the FY 2025 Executive Budget provides an additional $1.4 million for SED to study and design a new special education tuition rate-setting methodology in order to streamline and improve the timeliness of tuition rates for providers, bringing total available project funding to $3.9 million. The Executive Budget also extends the deadline for SED to present its recommendations from July 1, 2025 to July 1, 2027.

<u>Budget Implications</u>:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget.

<u>Effective Date</u>:

This bill would take effect April 1, 2024, except that select provisions take effect on other specified dates.


**Part B – Ensure Instructional Best Practices in the Teaching of Reading**

<u>Purpose</u>:

This bill would require instructional best practices for the teaching of reading to be applied in every school district in the state.

<u>Summary of Provisions and Statement in Support</u>:

This bill would require the Commissioner of the State Education Department (SED) to issue statewide instructional best practices in the teaching of reading for prekindergarten through grade three.  These instructional best practices would be aligned with evidence-based and scientifically-based principles, known as the "Science of Reading." SED would update these instructional best practices periodically where appropriate.  Beginning in the 2025-26 school year, these instructional best practices would be required to be implemented by all school districts, with districts certifying to SED by September 1 of each such year that their curriculum and instructional

7

programming and teacher professional development programs incorporate these instructional best practices.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget, which includes a $10 million appropriation that will provide necessary teacher training in the Science of Reading instructional principles to implement this new statewide requirement.

Effective Date:

This bill would take effect immediately.


**Part C – FAFSA Completion for High School Students**

Purpose:

This bill would require high school seniors or their parent or guardian, as applicable, to certify that they have either completed and submitted the Free Application for Federal Student Aid (FAFSA) or DREAM Act application, or completed a waiver form indicating they were aware of the FAFSA but had chosen not to complete it.

Summary of Provisions and Statement in Support:

For each high school senior, this bill would require school districts to obtain from the student's parent or guardian or from the student (if applicable) either certification of completion and submission of the FAFSA or the New York State DREAM Act application or completion of a waiver form indicating that they were aware of the FAFSA but had chosen not to complete it.

For each high school, districts would be required to annually report to the State Education Department (SED) the number of seniors enrolled, the number certifying completion of the FAFSA or the DREAM Act application, and the number completing the waiver.

School districts would also be required to inform seniors of available State-sponsored financial aid for college and to provide access or referrals to FAFSA completion assistance.

Under this bill, all individual students would still be able to graduate high school regardless of whether they complete the FAFSA. This initiative would ensure that every New York student has access to the full breadth of their financial aid options and opportunities for future success.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget. It is a vital component of the Governor's commitment to affordable higher education and ensuring students maximize available financial aid.  It also has the potential to increase enrollment at New York's colleges and universities.

Effective Date:

This bill shall take effect on the July 1 next succeeding the date on which it shall have become a law.


**Part D – Amend Requirements for Bundy Aid Apportionment**

Purpose:

Starting in the 2024-25 academic year, this bill would limit institutional eligibility for Unrestricted Aid to Independent Colleges and Universities, also known as Bundy Aid, to institutions with endowment assets of less than $750 million.

Summary of Provisions and Statement in Support:

Currently, 107 private institutions of higher education receive Bundy Aid. This bill would limit eligibility for Bundy Aid to private colleges and universities with endowment assets of less than $750 million. The bill would also amend Education Law to ensure the State's total liability for Bundy Aid is limited to the amount appropriated in each year's budget, with aid to each institution reduced proportionally as necessary to fit within this amount, codifying longstanding language in the annual appropriation for the program.
Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget, as it would yield annual State savings of $13.6 million in FY 2025 and $19.4 million in each year thereafter.

Effective Date:

This bill shall take effect July 1, 2024.

9

**Part E – Ensuring Informational Coordination Between State Educational Agencies**

Purpose:

This bill would streamline informational coordination between the State Education Department (SED), the Higher Education Services Corporation (HESC), the State University of New York (SUNY), and the City University of New York (CUNY) for purposes of more effectively and efficiently serving the educational needs of students.

Summary of Provisions and Statement in Support:

This bill would amend Education Law to clarify that student data may be shared by educational agencies with HESC, SUNY, and CUNY for educational purposes in accordance with the provisions of the federal Family Educational Rights and Privacy Act (FERPA). The bill would also authorize HESC to provide other State educational authorities with any assistance or data necessary for purposes of financial aid program evaluation.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget.

Effective Date:

This bill shall take effect immediately.

**Part F – Tuition Assistance Program Tuition Credit Extender**

Purpose:

This bill would permanently extend the Tuition Assistance Program (TAP) tuition credit and the other remaining provisions of the NY-SUNY 2020 Challenge Grant Program Act.

Summary of Provisions and Statement in Support:

This bill would permanently extend the TAP tuition credit and the other remaining provisions of the NY-SUNY 2020 Challenge Grant Program Act (Chapter 260 of the Laws of 2011, as amended), which would otherwise expire on July 1, 2024.

The TAP tuition credit, authorized by Education Law § 689-a, requires institutions of the State University of New York (SUNY) and the City University of New York (CUNY) to reduce the amount of tuition billed to TAP award recipients based on the difference between the maximum TAP award (currently $5,665) and full-time resident

undergraduate tuition (currently $7,070 for SUNY State-operated campuses). Pursuant to Education Law §§ 355 and 6206, the State now fully reimburses SUNY and CUNY for the cost of these TAP tuition credits. This State reimbursement authorization is already permanent law. Removing the TAP tuition credit repeal date in current law would align these interrelated provisions of law.

In addition to the TAP tuition credit, this bill would permanently extend several other provisions of law in the NY-SUNY 2020 Challenge Grant Program Act, in effect since 2011, including the requirement for the foundations of SUNY State-operated campuses to adopt conflict-of-interest policies.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget, which includes full reimbursement of the TAP tuition credit under current statutory formulas and payment provisions.

Effective Date:

This bill would take effect immediately.


**Part G – Continue the Current Financing Structure for Residential Placements of Children with Special Needs Outside of New York**

Purpose:

This bill enacts into law provisions to extend and make permanent the current structure of financing Committee on Special Education (CSE) residential placements outside of New York City.

Summary of Provisions and Statement in Support:

This bill amends section 3 of Part N of Chapter 56 of the Laws of 2020 to remove the April 1, 2024 sunset and make these provisions permanent.

Part N of Chapter 56 of 2020 eliminated the 18.424 percent State share for residential placements made by a school district CSE outside of New York City and increased the school district's share by an equal amount, from 38.424 percent to 56.848 percent. This Chapter also shifted the 50 percent State share for certain placements to the NYS School for the Blind or the NYS School for the Deaf to the school district. These changes better aligned fiscal responsibilities with the entity that makes the placement decisions and provided parity with New York City's funding structure for CSE placements.

11

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because it achieves Financial Plan savings associated with extending the current funding structure for CSE placements outside of New York City.

Effective Date:

This bill would take effect April 1, 2024.


**Part H – Authorize the Pass-Through of any Federal Supplemental Security Income Cost of Living Adjustment**

Purpose:

This bill would authorize Federal Supplemental Security Income (SSI) benefits to be increased in 2024 to account for the SSI Cost of Living Adjustment (COLA) and allow such benefits to be further increased in 2025 if there are increases in the Federal benefit during the first half of that calendar year. It also would update the Personal Needs Allowance (PNA) for SSI recipients in congregate care and allow for those to be adjusted in 2025 based on any Federal SSI COLA in the first half of that calendar year.

Summary of Provisions and Statement in Support:

Social Services Law (SSL) establishes specific amounts for the monthly SSI standard of need (the maximum combined Federal and State benefit) for all SSI recipients in various living arrangements. The SSL also establishes specific amounts for the PNA for SSI recipients in congregate care. The bill would increase the standard of need for all SSI recipients based on their living arrangements to reflect the Federal SSI COLA. The bill further would provide for the SSI standards of need to be increased in 2025 if the federal SSI benefit is increased in the first half of that calendar year. This bill also would set forth the 2024 PNA amounts for SSI recipients in congregate care, which varies depending on the type of congregate care setting, and to allow those amounts to be automatically increased in 2025 by the percentage of any Federal SSI COLA that becomes effective within the first half of the calendar year 2025.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because without it, there would be no statutory authority to provide eligible recipients with the Federal SSI COLA.

Effective Date:

This bill would take effect December 31, 2024.

**Part I – Implement Mandatory Federal Child Support Changes**

Purpose:

This bill would ensure New York maintains compliance with federal rules and regulations regarding child support. Specifically, it amends the Family Court Act (FCA) and Domestic Relations Law (DRL) to comply with the provisions of the Federal Flexibility, Efficiency, and Modernization in Child Support Enforcement Programs.

Summary of Provisions and Statement in Support:

Federal regulations require that child support guidelines base the support payment amount on the earnings and income of the noncustodial parent, the basic subsistence needs of the noncustodial parent and, where authorized to impute income to the noncustodial parent, upon consideration of that parent's specific circumstances. This bill would amend the FCA and DRL to bring New York State into compliance with these federal guidelines.

Current law requires an incarcerated person to continue to make child support payments in accordance with their former resources or income if the incarceration was the result of non-payment of a child support order, or if the person committed an offense against the custodial parent or child who is the subject of the order of judgment. This proposal would amend the relevant DRL and FCA provisions to remove these two grounds for determining a parent has voluntarily reduced their income.

Collectively, the above changes would bring the State into compliance with federal regulation.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget as determination of noncompliance by the federal government would jeopardize federal reimbursement for the State's Child Support Enforcement program. Furthermore, compliance is a condition of eligibility for federal Temporary Assistance for Needy Families (TANF) block grant funding. Between the two, noncompliance would potentially threaten the State's receipt of hundreds of millions of dollars in federal resources.

Effective Date:

This bill would take effect immediately.

13

**Part J – Require Paid Breaks for Breast Milk Expression in the Workplace**

Purpose:

This bill would require paid break time up to 20 minutes for breast milk expression.

Summary of Provisions and Statement in Support:

Currently, employees who are nursing and who need to express breast milk in the workplace are not entitled to paid breaks to do so. Working mothers who are nursing must either take unpaid time to express breast milk at work, a reduction in pay, or work additional hours.

This bill would amend the Labor law to require paid breaks for up to 20 minutes, for breast milk expression. Nursing employees who take in excess of 20 minutes to express breast milk would be permitted to be covered using existing paid break time or meal time.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because it will preserve equal wages for working mothers who are nursing while driving greater worker retention.

Effective Date:

This bill would take effect 60 days after enactment.


**Part K – Limit Liquidated Damages in Certain Frequency of Pay Violations**

Purpose:

This bill would amend the Labor Law to limit plaintiffs' recovery of liquidated damages for violations of the frequency of payment provisions in the Labor Law where employees were paid regularly on at least a semi-monthly basis.

Summary of Provisions and Statement in Support:

The frequency of pay provision of the Labor Law requires manual workers to be paid weekly, with some exceptions. Section 198 of the Labor Law allows for 100 percent of liquidated damages of any untimely payment of wages and has a six-year statute of limitations. This means plaintiffs who seek judicial relief after being paid on a bi-weekly schedule, instead of a weekly schedule, could be entitled to liquidated damages equal to six years of their wages, even if they were being paid all of their earned wages on a regular, but technically untimely, schedule.

14

In 2019, the Appellate Division ruled in *Vega v. CM & Associates Construction Management, LLC* that "manual workers" who received full pay but were paid late in violation of the weekly frequency of payment provision of the Labor Law have a private cause of action and can recover liquidated damages for untimely payment of wages. Lawsuits of this kind are increasing in frequency against large and small businesses and resulting in large payouts for workers and plaintiffs' attorneys, causing some employers serious financial harm.

This bill would clarify that, the Labor Law does not entitle a plaintiff to 100 percent liquidated damages if they were paid at least semi-monthly.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because it will avoid unnecessary financial harm to employers and businesses in situations where they have been paying employees the correct amount on a regular, and timely, bi-weekly schedule.

Effective Date:

This bill would take effect 60 days after enactment.


**Part L – Expand Recovery Tools for Stolen Wages**

Purpose:

This bill would expand the Department of Labor's (DOL) enforcement powers as it relates to collection of lost wages.

Summary of Provisions and Statement in Support:

This bill would grant DOL additional enforcement powers to collect lost wages when an employer has violated wage payment provisions. The bill would authorize the seizure of assets to satisfy employer debt owed to employees. When enforcing wage payment laws, DOL could issue a warrant to the respective county sheriff, commanding them to levy and sell the real and personal property which may be found within their county of an employer in order to pay owed wages, interest, penalties, and the cost of executing the warrant. Upon receipt of the warrant, the sheriff would be required to file it with the county clerk within 5 days and pay any collected funds to DOL within 60 days. These are the same enforcement powers DOL is authorized to use for collection of unpaid contributions owed to the Unemployment Insurance Trust Fund.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because it will provide DOL necessary enforcement authority to collect stolen wages owed to New York's workforce.

Effective Date:

This bill would take effect immediately.

**Part M – Sunset the State's COVID-19 Sick Leave Law**

Purpose:

This bill would sunset the State's COVID-19 Sick Leave Law.

Summary of Provisions and Statement in Support:

Chapter 25 of the Laws of 2020 enacted the State's COVID-19 Sick Leave Law, which required employers to provide sick leave benefits, paid family leave, and benefits due to disability for employees subject to a mandatory or precautionary order of quarantine or isolation due to COVID-19. New York's nation-leading paid sick leave laws provide all New Yorkers with sick leave protections, regardless of which illness they are experiencing. As the federal COVID-19 state of emergency has concluded, it would be prudent for this COVID-19 sick leave initiative to conclude as well.

The bill would sunset the State's COVID-19 Sick Leave Law as of July 31, 2024.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because quarantine requirements have changed, making the present eligibility requirements of the COVID-19 Sick Leave Law unclear. With the end of the COVID-19 state of emergency, this law is no longer necessary.

Effective Date:

This bill would take effect immediately.

**Part N – Authorize Mortgage Insurance Fund (MIF) Utilization**

Purpose:

This bill would allow for the utilization of $94.95 million from the Mortgage Insurance Fund's (MIF's) excess reserves to support vital community development and housing programs.

Summary of Provisions and Statement in Support:

The MIF, a fund of the State of New York Mortgage Agency (SONYMA), was created in 1978 to insure mortgage loans for projects that would not otherwise be able to obtain mortgage insurance, thereby encouraging the commercial and public investment of mortgage capital and increasing the supply of affordable housing in New York State.
The SONYMA statute requires that any excess revenues from the MIF, after accounting for expenses and the required reserves, be returned to the State following SONYMA Board approval. The MIF has been previously used to support new housing development and to support certain housing and related programs. Similar to what is being proposed in FY 2025, in the FY 2024 Budget, excess revenues from the MIF were used for housing programs and funding for community-based housing corporations involved in housing and related community development work.

The MIF is currently projected to have $94.95 million of excess reserves that can be accessed without negatively impacting the MIF's credit rating. As set forth in sections 1 through 4 of the bill, these funds would be used to support the following programs:

- Neighborhood and Rural Preservation Programs ($18.19 million), which support community-based housing corporations across the State that provide various housing related services for low- and moderate-income populations;
- The Rural Rental Assistance Program ($23.18 million), which supports rental subsidies for low-income and elderly and family tenants residing in federally funded multifamily projects in rural areas of the State; and
- Homeless housing programs ($53.58 million), including the Solutions to End Homelessness Program, the New York State Supportive Housing Program, and the Operational Support for AIDS Housing Program.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because it is necessary to fund the aforementioned programs.

Effective Date:

This bill would take effect immediately.

**Part O – Enhance Protections Against Deed Theft**

Purpose:

This bill would establish the crime of deed theft to protect heirs' property and prevent deed theft in New York State. This would strengthen protections against predatory investors initiating partition action of heirs' property, and allow homeowners without a will to indicate who should receive their property on death in the deed itself.

Summary of Provisions and Statement in Support:

This bill would make a series of reforms to combat practices scammers use to steal homes and equity from homeowners or their heirs. First, this bill would define deed theft as a crime for any person who intentionally alters, falsifies, forges, or misrepresents property documents; or intentionally misrepresents themselves as the owner or authorized representative of property to induce others to rely on such false information to obtain possession of the property; or intentionally takes, obtains, steals, or transfers title or ownership of real property by fraud, forgery, larceny or other deceptive practice. It would create the crimes of deed theft in the first, second, and third degree, as well as the crime of aggravated deed theft.

The bill would also make changes to the Real Property Actions and Proceedings Law (RPAPL) to protect from predatory investors family members who jointly inherit property after a homeowner dies without a will. The bill would prohibit anyone other than a relative who inherited the home directly or from another relative heir from initiating a partition action to force a sale. The bill also would require notice to relative heirs if anyone offers to buy a co-owner's shares and would give the relative heirs a right of first refusal to match the offer.

Further, it would create the process for transfer on death deeds in which an individual may transfer property to one or more beneficiaries effective at the transferor's death. This practice is widely used in other states to help families retain control of generational wealth even if they do not have a will, avoiding deed theft during the intestacy process.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because it will combat practices used to conduct deed theft and thereby protect New York homeowners and safeguard their families' accumulated generational wealth.

Effective Date:

This bill would take effect 90 days after enactment, provided that the section pertaining to transfer on death deed shall apply to any transfer on death deed made before, on, or after the effective date made by a transferor dying on or after the effective date.

**Part P – Authorize the repurposing of real property owned by SUNY and DOT.**

Purpose:

This bill would authorize the transfer and/or repurposing of real property owned and maintained by the State University of New York (SUNY) and the Department of Transportation (DOT). In furtherance of the Governor's bold housing agenda, the development of State-owned property could result in the development of approximately 15,000 units of new housing.

Summary of Provisions and Statement in Support:

This bill would authorize the SUNY Trustees to lease approximately 8.7 acres of vacant land at SUNY Farmingdale to the Farmingdale State Development Corporation for the purposes of developing, constructing, maintaining and operating multi-purpose facilities to support housing needs and related amenities. The resulting ground lease would be for 99 years, and would be subject to the approval of the Director of the Budget, the Attorney General, and the State Comptroller. All construction work performed on the project would be subject to laws regarding prevailing wages and participation of minority and women owned business enterprises (MWBEs).

The bill would also authorize the SUNY Trustees to lease approximately 10 acres of underutilized land at SUNY Stony Brook for the purposes of developing, constructing, maintaining and operating multi-purpose facilities to support housing needs and related amenities. The resulting ground lease would also be for 99 years, and would be subject to the approval of the Director of the Budget, the Attorney General, and the State Comptroller. All work performed on the project would be subject to laws regarding prevailing wages and participation of MWBEs.
Additionally, the bill would authorize the Commissioner of Transportation to transfer and convey two parcels of State-owned land comprising approximately 12.5 acres in the Town of Babylon, Suffolk County.

This bill would enable the State to transfer and/or repurpose State-owned lands for more productive uses, such as the identified housing and supporting amenities at the SUNY sites.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget, as the Budget makes available $250 million as the first installment of $500 million that will be appropriated over two years for repurposing State-owned lands.

Effective Date:

This act would take effect immediately.

19

**Part Q – Authorize New York City and the New York State Urban Development Corporation to Allow for Denser Residential Development**

Purpose:

This bill would amend the Multiple Dwelling Law (MDL) to authorize the City of New York (the City) and the New York State Urban Development Corporation (UDC), in certain circumstances, to undertake public processes to allow for denser residential development than is otherwise permitted under the MDL. This bill would help create more housing and affordable housing.

Summary of Provisions and Statement in Support:

Currently, any dwelling or dwellings on a lot within New York City are held to a maximum floor area ratio (FAR) of 12.0. In effect, this law limits the size of residential buildings to 12 times the size of the lot on which they are built.

The proposed amendment to the MDL would authorize the City and UDC to allow for denser residential development than 12 FAR in specified circumstances. The City would be permitted to do so pursuant to a zoning law, ordinance, or resolution. UDC would be permitted to do so when provided for a general project plan, after consultation with local officials. This bill, which is requested by the City of New York, would allow for more housing to be built, including affordable housing.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because it addresses the shortage of housing and, in particular, affordable housing by removing an impediment to the development of critically-needed housing, including affordable housing, in a manner that is consistent with local needs.

Effective Date:

This bill would take effect immediately.


**Part R – Authorize Tax Incentive Benefits for Converting Commercial Property to Affordable Housing**

Purpose:

This bill would create a real property tax exemption to incentivize the inclusion of affordable housing in certain multiple dwellings converted from non-residential uses in New York City (NYC).

Summary of Provisions and Statement in Support:

This bill would establish the Affordable Housing from Commercial Conversion Tax Incentive Benefits (AHCC) program in NYC to incentivize the inclusion of affordable rental units in certain multiple dwellings converted from commercial, manufacturing, or other non-residential buildings. AHCC would not be available for converting a hotel or other class B multiple dwelling.

Eligible conversions would need to create six or more rental units, with a commencement date between December 31, 2022 and December 31, 2033, and a completion date on or before December 31, 2039. The Division of Housing and Community Renewal, in consultation with the NYC Department of Housing Preservation and Development, would promulgate regulations to set forth the length and amount of the AHCC tax benefit. Projects would be assessed for local improvements.

To receive AHCC, at least 20 percent of units would need to be affordable, including at least 5 percent affordable to households at or below 40 percent area median income (AMI). The weighted average of all affordable units could not exceed 80 percent AMI. Affordable units would be rent stabilized during the benefit period. The tax exemption would be subject to Labor Law 224-a regarding construction prevailing wages and that building service workers in buildings with 30 or more units that do not receive other substantial governmental assistance would receive prevailing wage during the benefit period.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because it will increase affordable housing by incentivizing affordability in commercial conversions.

Effective Date:

This bill would take effect immediately.


**Part S – Enable the City of New York to Create a Pathway to Legalize Pre-Existing Basement and Cellar Dwelling Units in New York City**

Purpose:

This bill would provide the City of New York with the authority to enact a local law allowing for the conversion of inhabited and other currently existing basement or cellar dwelling units to legal dwelling units. The bill would also allow the City of New York to create a program to provide amnesty to owners of existing basement or cellar dwelling units. The bill would establish certain broad framework requirements for any such

21

legalization and amnesty program that the City of New York may choose to enact via local law.

Summary of Provisions and Statement in Support:

This bill would authorize New York City to establish by local law a program to convert inhabited and other basement or cellar apartments currently in existence to legal dwelling units, provided that such conversions are done consistently with protection of health and safety. Such program would provide amnesty to landlords who convert basement or cellar apartments to legal dwelling units from civil prosecution for maintaining or having rented out the basement or cellar dwelling units prior to their legalization.

The bill would require the local law providing for legalizations to ensure that occupants of basement and cellar dwelling units who need to be evicted or otherwise removed from such basement or cellar dwelling unit in order to bring it into compliance with legal and program requirements would have a right of first refusal to return to the dwelling after its conversion to a legal unit. The bill would exempt the local law and any amendments to the City of New York's zoning resolution necessary to enact such a program from environmental review, and exempt the latter from additional land use review beyond a public hearing before the City of New York's planning commission and approval by such commission and the local legislative body.

By enabling the City of New York to create a pathway, consistent with maintaining health and safety, for converting existing basement or cellar dwelling units to legal apartments in New York City, this bill would increase the availability of housing and affordable housing in New York City. The bill would ensure existing tenants are able to return to converted basement or cellar units if they so choose and would increase the safety of current basement and cellar dwelling units by allowing the City to regulate rather than punish tenants for renting such units.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because it will combat the housing crisis and increase housing supply and safety by bringing existing basement or cellar units under the legal oversight of the City in a manner consistent with maintaining health and safety.

Effective Date:

This bill would take effect immediately.

**Part T – Extend the Project Completion Deadline for Vested Projects in Real Property Tax Law 421-a**

Purpose:

This bill would extend the deadline to complete a vested Real Property Tax Law (RPTL) 421-a project. This would help ensure the completion of thousands of units of housing in New York City that are currently at risk of not being built.

Summary of Provisions and Statement in Support:

Under current law, to be eligible for a tax abatement pursuant to section 421-a of the RPTL, a vested project must be completed by June 15, 2026. This bill would extend this completion deadline to June 15, 2031.

The COVID-19 pandemic slowed down construction for many residential buildings. As a result, permitted developments that would qualify for 421-a are at risk of missing the completion deadline and no longer being eligible, resulting in the potential loss of thousands of anticipated housing units, including affordable housing.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2025 Executive Budget because it will ensure that housing units, including affordable housing, that are permitted and vested in the 421-a program are able to be completed, supporting the State's housing goals.

Effective Date:

This bill would take effect immediately.

**Part U – Create New Tax Abatement for Rental Housing Construction**

Purpose:

This bill would create a new affordable housing tax incentive in New York City.

Summary of Provisions and Statement in Support:

This bill adds a new section 485-x of the Real Property Tax law establishing the Affordable Neighborhoods for New Yorkers Tax Incentive program (ANNY) to incentivize the development of housing that includes affordable units in New York City. ANNY benefit recipients would receive a full property tax exemption during the construction for up to three years. ANNY homeownership developments would then receive 40 years of full exemption. ANNY rental units would receive 25 years of full

23

exemption after the construction period, followed by 10 more years with the exemption percentage pegged to the percentage of units in the building that are affordable units.

The New York City Department of Housing Preservation and Development (HPD) would promulgate regulations to set the affordability requirements to receive ANNY benefits. All affordable rental units would be rent stabilized and, in buildings of 30 or more units, the rental units would be permanently affordable at the levels to be prescribed by HPD.

Building service workers in ANNY developments would receive prevailing wage during the benefit period. Construction wage requirements, including the average hourly wage requirements based on geography and building size and the fines for non-compliance, would be established by a memorandum of understanding (MOU) executed by the largest trade association of real estate developers in New York City and the largest building and construction worker trade labor association with membership in New York City. If an MOU is executed, buildings would need to commence development within five years of the MOU execution and complete within nine years of the MOU execution. If the MOU is not executed by January 1, 2025, the ANNY program would not go into effect.

Budget Implications:

Enactment of this bill is necessary to implement the FY 2024-25 Executive Budget in order to create a new tax incentive program to provide for the development of much needed housing, including affordable housing, in New York City.

Effective Date:

This bill would take effect immediately. However, the ANNY program would not go into effect unless the real estate industry and labor unions representing building and construction workers executed an MOU on construction wages by January 1, 2025.

The provisions of this act shall take effect immediately, provided, however, that the applicable effective date of each part of this act shall be as specifically set forth in the last section of such part.